ALLEN D. COWAN v. N.C. PRIVATE PROTECTIVE SERVICES BOARD

No. 8926SC443

(Filed 15 May 1990)

**Professions and Occupations § 1 (NCI3d) — private investigator's license — experience as investigative reporter**

Petitioner's activities as an investigative reporter for a newspaper qualified as "experience" in private investigative work required by former N.C.G.S. § 74C-8(d)(3) (1981) for a private investigator's license where his investigations encompassed several of the subjects listed in N.C.G.S. § 74C-3(8)(a), and the Private Protective Services Board erred in refusing to consider such experience on the ground that it was outside traditional investigative work because its purpose was to sell newspapers.

**Am Jur 2d, Licenses and Permits § 6.**

APPEAL by respondent from order entered 7 February 1989 by *Judge Frank W. Snepp, Jr.,* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 21 November 1989.

*George Daly for petitioner-appellee.*

*Lacy H. Thornburg, Attorney General, by Teresa L. White, Assistant Attorney General, for the State.*

GREENE, Judge.

Respondent North Carolina Private Protective Services Board ("Board") appeals the superior court's order and judgment reversing its decision denying petitioner a license as a private investigator.

**COWAN v. N.C. PRIVATE PROTECTIVE SERVICES BD.**

[98 N.C. App. 498 (1990)]

Petitioner Cowan ("Cowan") applied to the Board for a private investigator's license, pursuant to N.C.G.S. § 74C-2 (1981) (amended 1989). The Board denied Cowan's application, citing his "failure to meet the experience requirements as outlined in [N.C.G.S. §] 74C-8(d)(3) [repealed in 1989]." The Board made these findings:

### FINDINGS OF FACT

1. Petitioner's [Cowan's] education is as follows:

   A. Graduation from the University of Florida in 1968 with a degree in journalism.

   B. One year at the University of Michigan School of Law.

   C. Seminar on Investigative Reporting, American Press Institute, Reston, Virginia.

   D. Political Procedures Course, St. Petersburg Community College.

   E. Course of study and Florida Certification in law enforcement, Pinallis County, Florida.

   F. Course of Study and North Carolina Certification in law enforcement, Charlotte Police Academy.

   G. 1977 — Professional Journalism Fellowship from the National Endowment for the Humanities, University of Michigan.

2. Petitioner's experience is as follows:

   A. Three years with the Orlando Sentinel.

   B. Three years with the St. Petersburg Times.

   C. Nine and one-half years as an Investigative Reporter with the Charlotte Observer.

   D. Three years as an Investigative Reporter with the Stars and Stripes, Wiesbadden, West Germany.

   E. Fourteen months as an Investigative Reporter with the Business Journal of Charlotte.

   F. 1988 — Three months as investigator for duly-licensed North Carolina attorney.

G. Witness in cruelty to animals trial generated by Petitioner's article on the training of greyhound racing dogs.

H. 1973—Article on cruelty to animals submitted for Pulitzer Prize and received honorable mention.

I. 1973—Florida Society of Managing Editors voted Petitioner Best Investigative Reporter of the Year.

J. 1986—American Board of Realtors voted article on fraudulent land sales as Best Consumer Article of the Year.

K. Excellence in Journalism Award, Atlanta Chapter of the Society of Professional Journalists, Sigma Delta Chi, for Investigative Reporting.

3. Petitioner's assignments included the following:

A. 1973—Use of live rabbits in the training of greyhound racing dogs. National Humane Society began a national campaign against the practice and the State of Florida rewrote its cruelty to animals law. Gordon Oldom, then the District Attorney of Marion County, Florida, prosecuted the man accused of this practice and called the Petitioner to testify at the trial. The man was convicted and received a prison term.

B. 1979—Petitioner was voted by the editors of the Charlotte Observer to be the only reporter on that staff to cover the financial abuses in the PTL Ministry. From 1979-1983, this was Petitioner's sole duty assignment. Lawrence Bernstein, who was a Federal Communication (FCC) lawyer in 1979, stated, "It was through his (Petitioner's) diligence and investigative skill that serious allegations of misconduct involving the PTL Television Network were first uncovered. The FCC took these reports of Mr. Cowan very seriously. They were in fact a direct cause of the FCC ordering its own investigation of PTL."

C. Lincoln County. Improprieties in the Magistrate's and District Attorney's offices. Petitioner reported that DUI cases were being improperly dismissed. Chief Judge John Friday ordered 249 DUI cases to be reopened. The N.C. Department of Justice sent a special prosecutor to Lincoln County to prosecute the Magistrate.

    D. 1983—Fraudulent land sales to American servicemen. Article reprinted and distributed to all incoming servicemen.

    E. 1978—Abuses by a Charlotte businessman.

    F. 1986—Fraudulent mail order sales of synthetic diamonds.

    G. Mail order sale of overvalued coins.

    H. Crash of Eastern Airline plane at Douglas Municipal Airport in Charlotte.

4. Don Hardister was the PTL Chief of Security at Heritage USA for 12 years. He testified that during his tenure with PTL, he was aware of Petitioner's articles concerning PTL and launched an internal investigation to determine how the Petitioner was obtaining his information.

5. Peter S. Gilchrist, the District Attorney for the 26th Judicial District, testified that he knew Petitioner through a Mecklenburg County Study Commission and through Petitioner's efforts at having a potentially incorrect conviction investigated. Based on Petitioner's information, the District Attorney's Office reopened their investigation.

6. Ron Guerrette, a licensed private investigator, testified that Guerrette was employed by Attorney Eddie Knox[,] who represented the PTL ministry. As a result of the Petitioner's articles, Guerrette was directed to determine where the Petitioner obtained his information.

7. The Charlotte Observer recently won a Pulitzer prize for its coverage of the PTL Ministry financial abuses.

8. The following hours of reporting have been documented:

    A. Stars and Stripes, 3½ years, 1,750 hours.

    B. Charlotte Business Journal, 560 hours.

    C. Charlotte Observer, 350 hours.

The Board concluded that Cowan's 3,000 hours experience as a newspaper reporter did not qualify as "experience" required by N.C.G.S. § 74C-8(d)(3) (1981) (repealed 1989). Cowan then petitioned the superior court for review of the Board's denial pursuant to N.C.G.S. § 150B-51(a-b). The superior court judge reversed the Board's

decision, and entered an order and judgment directing the Board to grant Cowan a private investigator's license.

---

The dispositive issue is whether the Board's findings and conclusions were supported by substantial evidence.

I

Our review of an administrative agency's decision is governed by the Administrative Procedure Act, and we may reverse or modify the Board's decision only if it violates one of five statutory grounds. *Walls & Marshall Fuel Co., Inc. v. N.C. Dept. of Revenue*, 95 N.C. App. 151, 153, 381 S.E.2d 815, 817 (1989) (citations omitted); N.C.G.S. § 150B-51 (Cum. Supp. 1989). More particularly, if "the substantial rights of the [petitioner] may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are . . . (5) [u]nsupported by substantial evidence . . . in view of the entire record[,]" we may reverse the Board's decision. N.C.G.S. § 150B-51(b). We determine that the Board must be reversed for lack of substantial evidence and the statute's disjunctive "or" language renders unnecessary our review of other bases for reversal or modification of error.

In determining whether the Board's findings and conclusions are supported by substantial evidence, we apply the "whole record" test. N.C.G.S. § 150B-51(b)(5); *Watson v. North Carolina Real Estate Com'n*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296, *cert. denied, temp. stay denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). In the whole record test, the reviewing court takes into account " 'both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached. . . . "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." . . . .' " *Id.* (citation omitted).

Until 1989, an applicant was required to meet statutory prerequisites for obtaining a private investigator's license, including an experience requirement of "at least three years experience within the past five years in private investigative work . . ." N.C.G.S. § 74C-8(d)(3) (repealed 1989). Also until 1989, an applicant could satisfy this experience requirement if he had

engage[d] in the business of or accept[ed] employment to furnish, agree[ed] to make, or [made] an investigation for the purpose of obtaining information with reference to:

a. Crime or wrongs done or threatened against the United States or any state or territory of the United States;

b. The identity, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation, or character of any person;

c. The location, disposition, or recovery of lost or stolen property;

d. The cause or responsibility for fires, libels, losses, accidents, damages, or injuries to persons or to properties, provided that scientific research laboratories and consultants shall not be included in this definition;

e. Securing evidence to be used before any court, board, officer, or investigation committee, or

f. Protection of individuals from serious bodily harm or death.

N.C.G.S. § 74C-3(8)(a) (amended 1989).

The Board must "consider all evidence of experience that is investigative in nature to determine if the applicant had the necessary experience." *Boston v. N.C. Private Protective Services Board,* 96 N.C. App. 204, 207, 385 S.E.2d 148, 151 (1989).

The Board does not dispute that Cowan's investigations encompassed several of the subjects listed in the statute. Instead, the Board contends that it can reject Cowan's newspaper research as being outside "traditional investigative work" because Cowan's 'purpose' was to sell newspapers and not to obtain information. We disagree.

Reviewing the whole record, we determine that a reasonable person would conclude that Cowan's research activities were investigative, for the 'purpose of obtaining information,' and the Board's findings and conclusions were not supported by substantial evidence. The Board did not attempt to define 'traditional investigative work,' but whatever the definition, news gathering and research has been part of an investigative tradition that predates the American Revolu-

tion. It is an applicant's 'purpose to obtain information' that determines whether he is acting as a 'private investigator' and not how he uses the information after obtaining it. That the information ultimately generates business or income is irrelevant. *See Boston*, at 207, 285 S.E.2d at 150 (a bail bondsman runner who investigates a defendant's whereabouts in furtherance of the bail bondsman's business does investigative work).

The superior court properly reversed the Board's decision denying Cowan's application based on the lack of substantial evidence.

Affirmed.

Judges JOHNSON and PARKER concur.