NORTH CAROLINA DEPARTMENT OF CORRECTION v. EDWARD EARL HODGE

No. 8910SC655

(Filed 7 August 1990)

1. **Master and Servant § 7.5 (NCI3d) — correctional officer promotion decision — discrimination alleged — appropriate evidentiary standards and legal principles applied**

The State Personnel Commission, in making an award in favor of respondent employee for racial discrimination in a Central Prison correctional officer employment promotion decision, used the appropriate evidentiary standards and legal principles in evaluating the evidence of discrimination where the Commission used the "disparate treatment" test; according to this analysis the employee has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination, which respondent in this case did; the employer then had the opportunity to rebut the employee's prima facie showing; and the employee then had the opportunity to demonstrate that the employer's proffered reasons for its decision were not its true reasons.

**Am Jur 2d, Job Discrimination §§ 57, 1974, 2003.**

2. **Master and Servant § 7.5 (NCI3d) — correctional officer promotion decision — nondiscriminatory reason as pretext for racial discrimination — sufficiency of evidence**

Evidence was sufficient to support the finding by the State Personnel Commission that respondent correctional officer was in fact better qualified for a captain's position than the promoted employee and that the State's nondiscriminatory reason for promoting the other employee was therefore a pretext for racial discrimination where the evidence tended to show that respondent was black and the promoted employee was white; excluding interview evaluations in comparing respondent to the promoted employee, respondent scored 9% higher on the eligibility examination, showed that he had 50% more experience in years working at Central Prison, and 100% more experience in years serving as a correctional lieutenant; the interview committee's rankings contradicted respondent's achievements on objective tests evaluating his knowledge of the same subjects tested in the interview; the State's use of the interview as the sole criteria for not promoting respondent contravened its own system of promotion, in that the State allowed the interview to carry more weight than all of the other items of evaluation combined; the eleven point difference in the promoted employee's score on the interview and respondent's score was in fact minimal in light of the fact that three interviewers evaluated the candidates on five categories, giving rise to fifteen possible scores, and respondent's scores were within one point of the promoted employee's scores on fourteen of the fifteen individual scores; and there was no conclusive showing that the next candidate in line, a black, would have automatically received the position if the recommended candidate had not filled it.

**Am Jur 2d, Job Discrimination §§ 57, 1974, 2003.**

APPEAL by the North Carolina Department of Correction from order entered 24 April 1989 by *Judge A. Leon Stanback* in WAKE County Superior Court. Heard in the Court of Appeals 9 January 1990.

*Lacy H. Thornburg, Attorney General, by Valerie L. Bateman, Associate Attorney General, for the State.*

*Adams, McCullough & Beard, by Abraham Penn Jones, for respondent-appellee.*

GREENE, Judge.

The State appeals the superior court's order affirming the award of the State Personnel Commission ("Commission") in favor of employee Edward Earl Hodge ("Hodge") for racial discrimination in a Central Prison correctional officer employment promotion decision.

The record shows that the North Carolina Department of Correction, Division of Prisons, employed Hodge, who is black, as a lieutenant correctional officer at Central Prison. In March, 1987, a black correctional officer transferred from his captain's position, leaving a vacancy, for which Hodge applied. At the time Hodge applied for the position, he had been a Central Prison correctional officer for eighteen years, occupying the rank of lieutenant for eleven of the years. Six other lieutenants also applied for the promotion, of whom two were black. A three-member prison employment commission, appointed by the prison warden, interviewed Hodge for the position, but recommended that the warden promote another correctional lieutenant, who is white. The three commission members included the deputy warden, personnel director and chief of prison operations, all of whom are white. The record shows that each of the three interviewers rated the candidates in five categories: interview behavior, job knowledge, policy and procedures, leadership ability, and judgment. The interview evaluation provided each candidate with fifteen individual scores of up to five points each, for a possible total of 75 points. The interviewers scored the promoted employee with a cumulative total of 71 points and Hodge with a cumulative total of 60 points. Based on the commission's recommendation derived from the interview scores, the Central Prison warden promoted the white lieutenant to the position. Hodge filed a grievance, alleging racial discrimination and requesting review of the promotion by a Commission Administrative Law Judge (ALJ).

At the ALJ hearing, Hodge offered evidence showing that he had been tested for promotion to captain, achieving a score of 96 of 100 points, the highest applicant score on the correctional captain permanent-employment eligibility list. Hodge also introduced evidence that he had more experience as acting temporary shift commander than any other applicant, and that his employment performance appraisal for the two years preceding his application included excellent ratings and high recommendations. Hodge had

**N.C. DEPT. OF CORRECTION v. HODGE**

[99 N.C. App. 602 (1990)]

taught prison policy, procedure and operations to other correctional officers for approximately 10 years. Upon the former correctional captain's departure, the outgoing captain appointed Hodge temporary acting captain during the interim period preceding selection of the permanent appointee. He also offered evidence showing that of the six current Central Prison captains, only one was a member of a racial minority. At the hearing, Hodge questioned and the personnel director on the interview board testified as follows:

Q. As far as seniority goes and rank as a lieutenant, is there any preference that is given to people that have seniority and rank?

A. It is explained to the candidate before the interview that we take all of these things into consideration, but no one item will carry more weight than the other.

. . .

A. We [Central Prison staff] have made a good attempt to promote those people [minorities]. We often are criticized. I have personally been criticized by the majority in that the next person promoted is going to be black.

. . .

[ALJ] Q. But that would influence you to make sure that it was white, then, right, if they criticized you to that extent?

A. I think they were criticizing me to the fact that they say we promote minorities.

. . .

Q. You stated that you had been criticized by the majority — and I would assume that whites are the majority — to the fact that the next promotion would probably be a black one?

A. That is true.

. . .

Q. If there were to be a promotion tomorrow to captain, would the number two person automatically get it, or would there be a whole new interview?

A. For correctional captain, we would probably hold another interview.

**N.C. DEPT. OF CORRECTION v. HODGE**

[99 N.C. App. 602 (1990)]

Q. So, in essence, if you came in second, you have profited none?

A. You have to put them in priority order.

At the hearing, the prison warden who promoted the white lieutenant testified that he would have promoted a black if the promotee could not serve.

The State put on no evidence, contending that "although he [Hodge] is an eminently qualified correctional lieutenant, [he] was not as qualified for the position of correctional captain as the person who was selected for the position." The ALJ determined in favor of Hodge that the State's decision was racially discriminatory. The State appealed the ALJ's recommendations and opinion to the full Commission, pursuant to N.C.G.S. § 150B-36(a).

The Commission made the following Conclusions:

1. Mr. Edward Earl Hodge . . . is a permanent State employee who has worked at Central Prison since 1969 and served as Lieutenant for more than twelve years. Because [Hodge] has alleged racial discrimination as the reason he was not promoted to Captain, the Office of Administrative Hearings has jurisdiction to hear the matter and submit a recommendation to the State Personnel Commission which shall make a final decision in the matter. North Carolina General Statutes 126-16, 126-36, 126-37 and 150B-23.

2. Whe[n] discrimination is an issue, [Hodge] bears the ultimate burden of proof and must establish a prima facie case of discrimination by providing sufficient facts in order to raise an inference of discrimination. In his effort to establish a prima facie case of discrimination, [Hodge] has shown the following: That he is a member of a protected class/group (minority); that he applied for a position which he qualified for; that the position was previously held by a Black; that the three persons who interviewed applicants and recommended a White employee for the position were White; that one member of his interviewing committee is not sure he understands affirmative action; that shortly before his interview, he was the subject of an unusual counseling session involving two committee members; that a member of

N.C. DEPT. OF CORRECTION v. HODGE

[99 N.C. App. 602 (1990)]

the committee penalized him for allegedly making statements about Central employees involved in executions and later posed for a newspaper photo in the gas chamber; that the majority of other personnel interviewing committees at his institution included a minority member; that the person who appointed the interviewing committee and followed its recommendation was White; that all three committee members gave him 20 of 25 points[,] which gives the appearance of being prearranged; that at least two members of the committee based their decisions partly on hearsay or uncorroborated allegations from two White Males; that the decision resulted in Central Prison having five White Captains and one Black Captain with 44% of the custody staff and 50% or more of inmates being Black; that he scored much higher on the Captain's Eligibility Exam than the successful applicant; that his 1985 and 1986 job performance evaluations had been excellent, but he received negative comments from a committee member in his 1987 evaluation which followed his appeal of this matter; and, that he had several more years of service as a Lieutenant and more experience as acting shift commander than the successful applicant.

Thus, [Hodge] has established a prima facie case of racial discrimination.

3. [The State], on the other hand, has given nondiscriminatory reasons for its decision to promote Lieutenant Sherwood McCabe rather than [Hodge]. McCabe received the highest ranking by the interviewing committee; he met the minimum qualifications for the position; he is well respected by inmates and staff; he has a reputation for fairness, maturity, self-control, deliberation and evaluation before acting. The members of the committee, while recognizing [Hodge]'s capabilities, were concerned by allegations that his manner at times had intimidated those under his supervision. [Hodge]'s outspokenness on issues such as smoking and executions at Central Prison has also aggravated some of his fellow employees and superiors. Thus, [the State] has rebutted [Hodge]'s prima facie case of racial discrimination.

4. While [the State] has advanced what it contends to be non-discriminatory reasons for not selecting [Hodge], [Hodge] has rebutted this evidence and has shown that [the State]'s reasons were in fact a pretext for intentional discrimination. [Hodge]'s evidence has shown that in addition to having more general experience than the successful applicant, [Hodge] specifically had more first shift experience. [Hodge] had been placed in charge of the first shift in an acting supervisory capacity by the previous Captain. Additionally, [Hodge] scored the highest score of all applicants on the objective test and had previously received the rating of "Exceeds Expectations" on his WPPRs.

Absent a direct admission by [the State] that the decision not to select [Hodge] was based, even in part on the impermissible consideration of his race, evidence of discrimination must be gleaned from the existing facts and circumstances. In the present case, [Hodge]'s 18 years experience with [the State] during which he received high ratings on his performance evaluations, had been apparently incident free. Yet, this service and unusually high performance ratings were not considered; based on the evidence, it appears that the scores derived from the interviews were the sole ranking factors used in making a recommendation for the promotion. The incident chosen by the [State] as a factor in not selecting him, had not previously been considered significant enough to merit even an oral warning or to be documented officially until three months after the event. But, this incident was apparently significant to be one of the bases for denying this promotion to [Hodge]. One other complaint which [the State] found significant about [Hodge] was that he had irritated other employees at his unit because of his insistence that prison policy be strictly followed and because he had instigated unpopular policy changes which prohibited smoking in closed areas. The lack of significance of these two matters, in the context of eighteen years of above-average service, prompts the conclusion that these reasons were, indeed, only a pretext for racial discrimination.

> [Hodge] has met and carried his burden of showing that he was discriminated against on the basis of his race by [the State]'s failure to select him for the Captain's position.

The Commission ordered the State to promote Hodge to the next captain's vacancy, pay Hodge "back and front pay," and pay Hodge's reasonable attorney fees.

The State petitioned the superior court for judicial review according to N.C.G.S. § 150B-43, alleging that the Commission's order was affected by errors of law, unsupported by substantial evidence, and arbitrary and capricious. The State also submitted to the court a motion to stay operation of the Commission's order.

After conducting a hearing, the superior court judge entered an order affirming the Commission's decision, based on its determination that the decision was not affected by errors of law, not contrary to presented evidence, not arbitrary and capricious, and was supported by substantial evidence in view of the entire record. The order also denied the State's motion to stay operation of the Commission's order.

---

The issues are whether the Commission's findings and conclusions are (I) (A) affected by an error of law or (B) unsupported by substantial admissible evidence; (II) whether the Administrative Law Judge erred in allowing Hodge to introduce evidence after hearing of the matter; and (III) whether the trial court erred in denying the State's motion to stay operation of the order in favor of Hodge.

I

"Our review of an administrative agency's decision is governed by the Administrative Procedure Act, and we may reverse or modify the [agency's] decision only if it violates one of five statutory grounds." *Cowan v. N.C. Private Protective Services Bd.*, 98 N.C. App. 498, 502, 391 S.E.2d 217, 219 (1990) (citation omitted); N.C.G.S. § 150B-51 (1987). Generally, our review is also limited by properly presented assignments of error and exceptions. N.C.R. App. P. 10 (amended 1989).

Based on the assignment of error, we determine if "the agency's findings, inferences, conclusions, or decisions are . . . [a]ffected

by . . . error of law [or] [u]nsupported by substantial evidence admissible under G. S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted . . ." N.C.G.S. § 150B-51(b)(4) and (5).

We apply the "whole record" test in determining whether the agency's findings and conclusions are supported by substantial evidence. *Cowan*, at 502, 391 S.E.2d at 219 (citations omitted). As a reviewing court utilizing the 'whole record' test, we take into account " 'both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached. . . . "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." . . .' " *Id*. (citations omitted). In applying this test, we do not substitute our own judgment for the Commission's judgment " 'as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before [us] *de novo.*' " *Thompson v. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted). We merely "determine whether an administrative decision has a rational basis in the evidence." *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979).

A

[1] The State contends that the Commission erred as a matter of law by applying erroneous evidentiary standards and legal principles in evaluating Hodge's claim of discrimination. We disagree.

In determining what test the Commission must apply, we "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination. cases." *N.C. Dept. of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983).

It is the policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race . . . by employers which regularly employ 15 or more employees.

N.C.G.S. § 143-422.2 (1987).

Any State employee . . . who has reason to believe that . . . promotion . . . was denied him . . . because of his

. . . race . . . shall have the right to appeal directly to the State Personnel Commission.

N.C.G.S. § 126-36 (1989). The purpose of N.C.G.S. §§ 126-36 and 143-422.2 is the elimination of discriminatory practices in employment, the same purpose as federal Title VII, 42 U.S.C. 2000e *et seq. Gibson*, at 141, 301 S.E.2d at 85.

When reviewing "hiring and promotion decisions that were based on the exercise of personal judgment or the application of inherently subjective criteria," a court may employ either or both a 'disparate treatment' test and a 'disparate impact' test. *Watson v. Ft. Worth Bank and Trust*, 487 U.S. 977, 101 L.Ed.2d 827, 841-43 (1988) (citation omitted) (determining that both tests may be applied to employers using objective tests and subjective interview evaluations); *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908 (4th Cir. 1989) (applying both tests). When an employee alleges that the employer treated him or her in particular less favorably than other employees, the employee raises a claim of 'disparate treatment.' *Watson*, 101 L.Ed.2d at 839. Here, Hodge alleged both types of discrimination, but offered evidence only of the State's disparate treatment form of discrimination.

According to the 'disparate treatment' analysis, the employee "has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination." *Patterson v. McLean Credit Union*, 491 U.S. ---, 105 L.Ed.2d 132, 157 (1989) (citation omitted). The employee meets this burden by proving that:

> [1] [he] applied for and was qualified for an available position, [2] that [he] was rejected, and that [3] after [he] was rejected [the employer] . . . filled the position with a white employee. . . . Once the [employee] establishes a prima facie case, an inference of discrimination arises . . . to rebut this inference, the employer must present evidence that the [employee] was rejected, or the other applicant was chosen, for a legitimate, nondiscriminatory reason. . . . employee retains the final burden of persuading the jury of intentional discrimination.

*Id.* (citations omitted).

A legitimate nondiscriminatory reason is an employer's promotion of a better-qualified employee than complainant. *Id.*

After the employer rebuts the employee's prima facie showing, the employee has "the opportunity to demonstrate that [the employer's] proffered reasons for its decision were not its true reasons." *Id.; cf. Price Waterhouse v. Hopkins*, 490 U.S. ---, 104 L.Ed.2d 268, 281 (1989) (describing employee's burden of proof in a "mixed motive" case, when the employer admits to using both a nondiscriminatory motive and a questionable motive).

The whole record shows that the Commission used the appropriate evidentiary standards and legal principles to evaluate this evidence. The Commission's findings and conclusions clearly set out the elements of each step delineated above, including Hodge's prima facie case, the State's rebuttal and Hodge's showing of pretext, as well as the shifting burdens of production and Hodge's burdens of proof for showing racial discrimination.

B

[2]	The State asserts that record evidence is insufficient to support the Commission's findings and conclusions that Hodge was in fact better qualified for the position than the promoted employee and that therefore, the State's nondiscriminatory reason was a pretext for racial discrimination. We disagree.

In support of the Commission's decision, the Commission first concluded as a matter of law that Hodge met his burden by showing by a preponderance of the evidence a prima facie case of discrimination. The parties stipulated that Hodge is a member of a minority race, that he was qualified for the position, and that the State rejected his application and promoted a white lieutenant.

The Commission next concluded as a matter of law that the State rebutted Hodge's prima facie showing by setting forth a nondiscriminatory reason for the State's decision not to promote Hodge, that the promoted lieutenant was better qualified than Hodge. In support of this reason, the State proffered evidence of the interview committee's ranking of Hodge fourth out of eight candidates, its ranking of the promoted employee first of eight candidates, and the Warden's heavy reliance on the committee's recommendation.

The ranking is some evidence that the promotion selection committee scored the promoted employee as higher qualified than Hodge in the categories of judgment and leadership.

**N.C. DEPT. OF CORRECTION v. HODGE**

[99 N.C. App. 602 (1990)]

Finally, the Commission concluded as a matter of law that the State's qualification reason was a pretext for racial discrimination.

An employee may use "various" forms of evidence to demonstrate that the State's proffered reason was not its true reason. *Patterson*, 105 L.Ed.2d at 158. An employee "might seek to demonstrate that [the employer's] claim to have promoted a better-qualified applicant was pretextual by showing that [he] was in fact better qualified than the person chosen for the position. . . . [Employee] may not be forced to pursue any particular means of demonstrating that [the employer's] stated reasons are pretextual." *Id.*

The whole record contains substantial evidence that Hodge was in fact better qualified for the job by the criteria advanced by the State for judging applicants. The Commission had a 'rational basis in the evidence' for deciding that the State's decision was pretextual in light of cumulative evidence that the interviewers were sensitive to criticisms that a black would be in line for the next correctional captain position and that the State disregarded the strength of Hodge's achievement in meeting the State's criteria for promotion. Excluding the interview evaluations in comparing Hodge to the promoted employee, Hodge scored 9% higher on the eligibility examination and showed that he had 50% more experience in years working at Central Prison, and 100% more experience in years serving as a correctional lieutenant.

The committee's interview was the only part of the application process in which Hodge was rated less qualified than another candidate, and its rankings contradict Hodge's achievements on objective tests evaluating his knowledge of the same subjects tested in the interview. The State's use of the interview as the sole criteria for not promoting Hodge contravened its own system of promotion, in which the State used the interview as one item that carried more weight than all of the other items of evaluation combined. In any event, although cumulative scoring of the interview categories yields an eleven-point difference between the promoted applicant's score of 71 of 75 points and Hodge's grade of 60, closer evaluation of the interview scores makes insignificant this differential and shows the comparable rankings of the candidates. Each of the three interviewers evaluated Hodge on five categories, giving rise to fifteen possible scores. Hodge's scores were within one point of the promoted employee's score on fourteen of the fifteen individual

scores, in several of which Hodge scored higher. On the remaining score, one interviewer rated Hodge two points lower than the promoted employee, another interviewer rated Hodge equal to the promoted employee, and the third interviewer rated Hodge one point below the promoted employee. Thus, the apparent significant downgrading of Hodge's qualifications compared to the promoted employee's qualifications evaporates in light of these slight numerical differentials and Hodge's achievements compared to the promoted employee's achievements.

The State contends that Hodge cannot show pretext because the interview committee rated a black applicant second most qualified for the promotion and a black would have been promoted if the white promotee did not fill the position. We disagree.

The evidence conflicts on whether Hodge would not have been promoted if the white promotee were removed from the position. The Central Prison personnel director testified that because of the importance of the position, the State would have conducted a new interview process if the recommended candidate had not filled the position. Such testimony does not show conclusively that the next candidate in line, a black, would have automatically received the position. Additionally, to assume automatic promotion for the employee ranked second in the interview portion of the evaluation would unduly weight the interview in contravention of the State's policy of considering all factors for promotion. The evidence reveals that the candidate rated second in the interview and eight points higher than Hodge on the fifteen interview score areas, had seven less years of experience at Central Prison than Hodge, eight less years of lieutenant experience, a 13-point lower score on the captain's eligibility test, and less favorable yearly employment appraisals.

II

The State contends that it was prejudiced by the ALJ's decision to allow Hodge to submit additional evidence after holding formal hearing. Because we did not consider the additional evidence for purposes of this appeal, we discern no prejudice to the State and do not address this issue.

III

The State argues finally that the superior court erred in denying its motion to stay operation of the court's judgment for Hodge.

STATE v. COTTON

[99 N.C. App. 615 (1990)]

Because we determine that the court and the Commission properly ruled in Hodge's favor, we need not address this issue.

Affirmed.

Judges JOHNSON and PARKER concur.