TIMMONS-GOODSON, Judge.
University of North Carolina Hospitals ("respondent") appeals the trial court order granting judgment in favor of Robin B. Smith ("petitioner"). For the reasons discussed herein, we reverse.
The facts and procedural history pertinent to the instant appeal are as follows: On 14 October 1999, petitioner filed a contested case petition with the Office of Administrative Hearings, alleging that respondent denied petitioner a promotion based upon discriminatory and impermissible selection factors. In the spring of 2002, petitioner's case was heard before an Administrative Law Judge ("ALJ"). Petitioner, a forty-three-year-old African-American female, argued that respondent denied her a promotion in favor ofBert Basabe ("Basabe"), a thirty-eight-year-old Hispanic male. Petitioner alleged that respondent based its decision to select Basabe on petitioner's race, color, sex, and age. After hearing testimony and receiving evidence from both parties, the ALJ concluded that petitioner had failed to establish a prima facie case on any of the alleged grounds of discrimination. The ALJ also concluded that petitioner had failed to establish a prima facie case of retaliation, and had failed to demonstrate a disparate impact in the hiring processes of respondent. In an order filed 14 July 2000, the ALJ recommended that the State Personnel Commission ("SPC") affirm respondent's decision not to promote petitioner.
After considering the ALJ's recommended decision, the SPC concluded that petitioner had failed to meet her burden of proving that respondent had discriminated against her on the basis of race, color, sex, or age. In an order filed 12 January 2001, the SPC adopted the ALJ's findings of fact and conclusions of law, thereby affirming respondent's decision not to promote petitioner.
Petitioner appealed the SPC's decision to the superior court. After considering oral and written arguments from the parties, the trial court concluded that the SPC had failed to apply the proper legal standard to petitioner's claim. Specifically, the trial court concluded that the SPC had failed to consider applicable case law in reaching its decision, most notably the Supreme Court's holding in Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 147 L. Ed. 2d 105 (2000). The trial court also examined the merits of petitioner's claim, and in an order entered 18 September 2002, the trial court reversed the SPC's decision and held that petitioner had sufficiently demonstrated claims of race, color, age, and sex discrimination. It is from this order that respondent appeals.
The issues on appeal are whether the trial court erred by: (I) choosing to apply the de novo standard of review; and (II) concluding that the SPC decision contained errors of law. We note initially that "an appellate court's obligation to review a superior court order examining an agency decision `can be accomplished by addressing the dispositive issue(s) before the agency and the superior court without examining the scope of review utilized by the superior court.'" Shackleford-Moten v. Lenoir Cty. DSS, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002) (quoting Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjust., 146 N.C. 388, 392, 552 S.E.2d 265, 268 (2001) (J. Greene, dissenting), rev'd per curium, 355 N.C. 269, 559 S.E.2d 547 (2002)), disc. review denied, 357 N.C. 252, 582 S.E.2d 609 (2003). Thus, we need not address respondent's arguments concerning the trial court's decision to apply de novo review, and we therefore limit our present review to those arguments regarding the trial court's analysis of the instant case.
Moreover, because our review of the trial court's order "is the same as in any other civil case - consideration of whether the court committed any error of law[,]" we will review the trial court's order de novo. In re Appeal by McCrary, 112 N.C. App. 161,165, 435 S.E.2d 359, 363 (1993). De novo review requires that the reviewing court consider the matter anew, thereby freely substituting its own judgment for that of the trial court. Sutton v. N.C. Dep't of Labor, 132 N.C. App. 387, 388-89, 511 S.E.2d 340, 341 (1999). Based upon this standard, we will impose our own judgment on this matter consistent with the record on appeal.
N.C. Gen. Stat. § 126-16 (2003) requires that equal opportunity be given to both applicants to and employees of state agencies, providing as follows:
All State departments and agencies and all local political subdivisions of North Carolina shall give equal opportunity for employment and compensation, without regard to race, religion, color, creed, national origin, sex, age, or handicapping condition . . . . This section with respect to equal opportunity as to age shall be limited to individuals who are at least 40 years of age.
Where a claimant alleges employment discrimination, the Supreme Court has established a burden-shifting scheme of review, where the following standards apply:
(1) The claimant carries the initial burden of establishing a prima facie case of discrimination.
(2) The burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the applicant's rejection.
(3) If a legitimate nondiscriminatory reason for rejection has been articulated, the claimant has the opportunity to show that the stated reason for rejection was, in fact, a pretext for discrimination.
Dept. of Correction v. Gibson, 308 N.C. 131, 137, 301 S.E.2d 78, 82 (1983) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36L. Ed. 2d 668 (1973)). In applying the burden-shifting scheme, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Gibson, 308 N.C. at 138, 301 S.E.2d at 83 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 215 (1981)).
A prima facie case of discrimination is established by demonstrating that the claimant:
(1) is a member of a protected class;
(2) applied for the position in question;
(3) is qualified for the position; and
(4) was rejected for the position in favor of someone not a member of a protected class.
See Gibson, 308 N.C. at 137, 301 S.E.2d at 82-83; Alvarado v. Bd. of Trustees of Montgomery College, 928 F.2d 118, 121 (4th Cir. 1991); Enoch v. Alamance Co. Dep't of Soc. Servs., ___ N.C. App. ___, ___, 595 S.E.2d 744, 752 (2004).
Once the claimant establishes a prima facie case of discrimination, "a presumption arises that the employer unlawfully discriminated against the employee." Gibson, 308 N.C. at 138, 301 S.E.2d at 83. However, "[t]he showing of a prima facie case is not equivalent to a finding of discrimination." Id. Instead, the burden shifts to the employer, which then "must clearly explain by admissible evidence, the nondiscriminatory reasons for the employee's rejection or discharge." Id. at 139, 301 S.E.2d at 84. The employer's explanation "must be legally sufficient to supporta judgment for the employer." Id. "If the employer is able to meet this requirement, the prima facie case, and the attendant presumption giving rise thereto, is successfully rebutted[,]" and the claimant "is then given the opportunity to show that the employer's stated reasons are in fact a pretext for intentional discrimination." Id.
In order to demonstrate that the employer's stated reasons are a pretext for intentional discrimination, the claimant "can reuse evidence from their prima facie showing . . . though the prima facie presumption has been dispelled." Enoch, ___ N.C. App. at ___, 595 S.E.2d at 752; Gibson, 308 N.C. at 139, 301 S.E.2d at 84. However, "[t]he trier of fact is not at liberty to review the soundness or reasonableness of an employer's business judgment when it considers whether alleged disparate treatment is a pretext for discrimination." Gibson, 308 N.C. at 140, 301 S.E.2d at 84. "Whether the employer's stated reasons are pretextual does not turn on whether the trier of fact approves of them. The issue is not whether the employer's decision was reasonable, but whether it was unlawfully motivated." Olsen v. Southern Pac. Transp. Co., 480 F. Supp. 773, 780 (N.D. Cal. 1979), aff'd sub nom. Willey v. Southern Pacific Transportation Co., 654 F.2d 733 (9th Cir. 1981). Thus, "it is not enough . . . to disbelieve the employer; the factfinder must believe the [claimant's] explanation of intentional discrimination." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519, 125 L. Ed. 2d 407, 424 (1993) (emphasis in original).
In the instant case, the SPC adopted the ALJ's conclusions oflaw, which held that petitioner failed to establish a prima facie case of discrimination on any of the alleged grounds. The SPC and ALJ further determined that, even if petitioner did establish a prima facie case of discrimination, petitioner was unable to demonstrate that respondent's legitimate reason for not promoting petitioner was actually a pretext for discrimination. On appeal, the trial court determined that the SPC failed to consider relevant case law in reaching its decision, and that its decision was contrary to law. We conclude that the trial court erred.
The trial court first determined that the SPC had erred by failing to consider Reeves, which, according to the trial court, "strongly reiterated the evidentiary burdens and standards to be followed in employment discrimination cases." In Reeves, the Supreme Court granted certiorari "to resolve a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination . . . combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination." 530 U.S. at 140, 147 L. Ed. 2d at 115 (internal citations omitted). The Court rejected the "pretext-plus" approach adopted by many circuits, where, in order to rebut the presumption that the employer's explanation was legitimate, the claimant was required to introduce additional evidence of discrimination, independent of that used to establish a prima facie case. Id. at 146, 147 L. Ed. 2d at 119. The Court concluded that the "pretext-plus" approach placed too high a burdenon the claimant, and the Court reiterated that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148, 147 L. Ed. 2d at 120. We conclude that Reeves is inapplicable to the instant case.
As discussed above, the ALJ and SPC concluded as a matter of law that petitioner failed to establish a prima facie case of discrimination on any of the alleged grounds. The ALJ began its discussion of respondent's proffered explanation by noting that it was assuming for the sake of argument that petitioner had established a prima facie case. Thus, the subsequent discussion regarding the explanation was dicta, and whether the ALJ or SPC employed a "pretext-plus" analysis in its discussion was irrelevant to the conclusion that petitioner had failed to establish a prima facie case of discrimination. Therefore, we conclude that the trial court erred by determining that petitioner was prejudiced by the discussion of respondent's proffered explanation.
After determining that the SPC had erred by failing to consider Reeves, the trial court then examined petitioner's claim de novo. The trial court concluded that petitioner had established a prima facie case of discrimination based on race, color, age, and sex, and that respondent's explanation for not hiring petitioner was merely a pretext for discrimination. After reviewing the record in the instant case, we conclude that the trial court erred.
As discussed above, to establish a prima facie case ofdiscrimination, the claimant must first demonstrate that she is a member of a protected class. See Gibson, 308 N.C. at 137, 301 S.E.2d at 83. Next, the claimant must demonstrate that she applied for the position in question. See id. In the instant case, the evidence presented at the ALJ hearing tends to show that petitioner is an African-American female over the age of forty, who applied for the Medical Laboratory Technologist III ("Med Tech III") position offered by respondent. Thus, petitioner has clearly satisfied the first two prongs of the prima facie case requirements.
The third prong requires that the claimant demonstrate she is qualified for the position offered by the employer. See id. In the instant case, the recruitment form for the Med Tech III position states that the following specific skills are required of applicants for the position:
Demonstrated experience in Histology with a thorough understanding of laboratory operations. Knowledge of theory and background information that is associated with histopathology. Paraffin embedding, sectioning using the microtome, troubleshooting of automated instruments.
Petitioner's evidence tends to show that she has worked for respondent since 1976, and that from 1976 to 1982, she worked as an histology technician. From 1982 to 1996, petitioner worked in the electromicroscopy laboratory, but she returned to the histology laboratory in 1996. Petitioner has been certified as an histology technician, and she has experience embedding, sectioning, and staining human tissue for analysis. Based upon her testimony,petitioner appears to have a thorough understanding of the histology laboratory's functions and operations. Thus, the evidence tends to show petitioner was qualified for the position offered by respondent, and therefore satisfied the third prong of the prima facie case requirements.
The fourth prong requires the claimant demonstrate she was rejected for the position in favor of someone not a member of a protected class. See id. In the instant case, we conclude that petitioner failed to satisfy the fourth prong with respect to her race, color, and age. With regard to her claim of discrimination based upon race and color, the evidence tends to show that Basabe, the individual selected for the Med Tech III position, is Hispanic with light brown-colored skin. In his application for the position, Basabe twice listed his race as Hispanic, once on the form granting respondent authority to conduct a background check, and once on the applicant log kept by respondent's personnel department. Basabe testified at trial that he was born in Quito, Ecuador, and considered himself "Spanish." He noted that petitioner had referred to him as "Latino" and that he had marked that he is Hispanic on his application, but that "they are the same." In its recommended decision adopted by the SPC, the ALJ, who witnessed Basabe at the hearing, found that "Mr. Bert Basabe is a Hispanic male with light brown-colored skin, who was thirty-nine years old on June 15, 1999.[1] Mr. Basabe was born in Quito,Ecuador." Our courts have previously recognized that Hispanic individuals are members of a protected group. Alvarado, 928 F.2d at 121; EEOC v. Sears Roebuck and Co., 243 F.3d 846, 851 (4th Cir. 2001). Thus, in light of the evidence in the instant case, we are unable to conclude that petitioner was rejected for the Med Tech III position in favor of an applicant who was not a member of a protected group. Therefore, we conclude that petitioner failed to establish a prima facie case of discrimination based on race or color, and the trial court erred in concluding to the contrary.
With respect to petitioner's claim of discrimination based upon age, we note that "the prima facie case requires `evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion[.]'" O'Connor v. Consol. Coin Caterers, 517 U.S. 308, 312, 134 L. Ed. 2d 433, 438 (1996) (quoting Teamsters v. United States, 431 U.S. 324, 358, 52 L. Ed. 2d 396, 429 (1977)) (emphasis in original). "In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor, 517 U.S. at 313, 134 L. Ed. 2d at 439. Although a difference of less than ten years has been held insignificant, we note that
There may be situations where a difference of less than ten years is substantial, and we have also previously made clear that "in cases where the disparity is less, the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant."
Hoffmann v. Primedia Special Interest Publications, 217 F.3d 522,524-25 (7th Cir. 2000) (quoting Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 893 (7th Cir. 1997) (holding that a six-to-seven year age difference is insignificant)).
In the instant case, petitioner was forty-three years old when she was denied the promotion given to Basabe, who was thirty-eight years old. We conclude that the difference in age of the applicants was insignificant, and thus presumptively insufficient to establish a prima facie case of age discrimination. A review of the record indicates that respondent routinely promotes individuals over the age of forty, including two of the individuals involved in interviewing petitioner. Petitioner failed to produce any competent evidence tending to show that age was a factor in respondent's decision. Thus, petitioner failed to establish a prima facie case of discrimination based upon age, and the trial court erred in concluding to the contrary.
With respect to petitioner's claim of discrimination based upon sex, because Basabe is male and petitioner is female, we conclude that petitioner did establish a prima facie case. Accordingly, we proceed to the next phase in the discrimination analysis, that is, determining whether respondent offered a legitimate explanation for its decision to promote Basabe rather than petitioner.
As discussed above, once petitioner establishes a prima facie case of sex discrimination, the burden shifts to respondent to offer a legitimate nondiscriminatory explanation for petitioner's rejection. Gibson, 308 N.C. at 138, 301 S.E.2d at 83. "The employer is not required to prove that its action was actually motivated by the proffered reasons[,] for it is sufficient if the evidence raises a genuine issue of fact as to whether the claimant is a victim of intentional discrimination." Id.
In the instant case, respondent asserts that, although petitioner and Basabe both met the skills and training requirements for the Med Tech III position, respondent believed Basabe was more suitable for the position because of the responses he gave during his interviews. In its memorandum decision, the trial court concluded that respondent's interview procedure runs counter to the General Provisions of the North Carolina Administrative Code. Specifically, the trial court determined that the interview process violated the requirements of 25 N.C.A.C. 1H. 0606, which requires that a promotion be "based upon a relative consideration of [applicants'] qualifications for the position to be filed" and that employers "reasonably document hiring decisions to verify" that "advantage" was "given to applicants determined to be most qualified[.]" The trial court further determined that respondent failed to consider properly the qualifications of the applicants. We disagree.
To support the assertion that respondent's interview process was discriminatory, petitioner and the trial court both cite this Court's decision in N.C. Dep't of Correction v. Hodge, 99 N.C. App. 602, 394 S.E.2d 285 (1990). In Hodge, we rejected an employer's explanation that it based its promotion decision on the scores achieved by applicants in an interview process similar to the oneused in the instant case. We first noted that "[t]he committee's interview was the only part of the application process in which Hodge was rated less qualified than another candidate, and its rankings contradict Hodge's achievements on objective tests evaluating his knowledge of the same subjects tested in the interview." Id. at 613, 394 S.E.2d at 291. Based on these facts, we concluded that "[t]he State's use of the interview as the sole criteria for not promoting Hodge contravened its own system of promotion, in which the State used the interview as one item that carried more weight than all of the other items of evaluation combined." Id. We conclude that Hodge is distinguishable from the instant case.
Unlike Hodge, in the instant case, respondent had consistently utilized the interview process since 1991, and therefore its decision to implement the process did not contravene its own system of promotion. Furthermore, the interview process was not the only part of the promotion decision in which Basabe was rated more qualified. Although the evidence presented tends to show that petitioner had twenty-three years of histology and related experience while Basabe had sixteen years of histology and related experience, the evidence also tends to show that the interviewers were more impressed with the nature of Basabe's experience. Prior to being interviewed, both Basabe and petitioner submitted applications for the position, which were reviewed by the interviewers prior to interviewing the applicants. At the ALJ hearing, Dr. Mary Iacocca ("Iacocca"), the medical director forhistology and one of the individuals who interviewed the candidates, testified as follows:
THE COURT: And then, I have that you - could you tell me - or qualify your testimony about what their qualifications were, your opinion of the three applicants' qualifications as far as their histology experience?
THE WITNESS: Based on my experience or based on what I read off their applications?
THE COURT: Applications. Before the interview.
THE WITNESS: I remember making a note that [Basabe] had trained at the [Armed Forces Institute of Pathology], which, in pathology, has a very good reputation, and that he also worked in a private lab. . . . And I was aware of [petitioner's] recent history of employment, in that she had been in electron microscopy . . . and then had been in histology for the last several years at UNC.
THE COURT: Had you at that point had any opinion whether they were qualified, not making any final decision, but how their qualifications ranked before the interview?
. . . .
THE WITNESS: If I had to give my personal feeling about qualifications simply on histology experience, I would say the length of time actually in the histology lab was very important to me. And so I would have ranked [Basabe] highly on that.
In support of its explanation, respondent offered the "interview guides" of Howard Parker ("Parker"), the supervisor of the pathology laboratory, Michael McDade ("McDade"), the financial and compliance officer for the laboratory, and Beverly Jones ("Jones"), a cytotechnologist in the cytology laboratory. The interview guides contained the interviewer's notations of the applicant's answers, including the scaled ratings relied upon in reaching a decision. The interviewers testified at the hearing and explained the interview process thoroughly. The interview process was structured to allow each candidate to interview with a panel of three to four interviewers, and its aim was to select the most qualified candidate. The interviewers asked each candidate questions set forth in the interview guide and then rated the candidate's answers on a scale of one to five. Basabe averaged a score of four on his answers to the interview questions, while petitioner averaged a score of three on her answers. Thus, in light of the record in the instant case, we conclude that the explanation and evidence offered by respondent satisfied its burden. Accordingly, we now consider whether respondent's explanation was a mere pretext for sex discrimination.
As discussed above, after the employer articulates a legitimate, nondiscriminatory reason for its hiring decision, the burden shifts to the claimant, who, in order to maintain a claim of discrimination, must demonstrate by a preponderance of the evidence that the employer's explanation is actually a pretext for discrimination. Gibson, 308 N.C. at 139, 301 S.E.2d at 84. Courtshave considered the following factors as relevant evidence of pretext:
(2) Evidence of the employer's treatment of the employee during his term of employment,
(3) Evidence of the employer's response to the employee's legitimate civil rights activities, and
(4) Evidence of the employer's general policy and practice with respect to minority employees.
Id. at 139-40, 301 S.E.2d at 84.
In the instant case, petitioner asserts that a pattern of sex discrimination existed in her work environment. She testified that Parker did not take women "seriously," and that she did not believe Parker "treated the women in the lab the same way [he] treat[ed] the men that are under his supervision." Petitioner asserts that Parker did not offer interview training to her or other females, or ask them if they wanted to be included on the computer implementation team. However, we note that petitioner's evidence is largely subjective, and, when considered in light of the evidence to the contrary, cannot reasonably be said to demonstrate that respondent's proffered explanation was a pretext for sex discrimination. Many of petitioner's fellow female co-workers were promoted, and one, Mary Parker ("Mary Parker"), was offered the Med Tech III position before it was ever posted. The laboratory had previously been supervised by women, and four of the six interviewers were women. In sum, petitioner's evidence is insufficient to establish that respondent intentionally discriminated against her based upon her sex. Thus, in light ofthe record in the instant case, we conclude that petitioner has failed to demonstrate by a preponderance of the evidence that respondent's explanation for hiring Basabe was a pretext for sex discrimination. Therefore, we conclude that the trial court erred by determining that petitioner was discriminated against based upon her sex.
In light of the foregoing conclusions, we hold that petitioner has failed to establish a claim of discrimination and that the trial court erred in concluding that the SPC's decision was effected by errors of law. Accordingly, the order of the trial court is reversed.
Reversed.
Judges WYNN and ELMORE concur.
Report per Rule 30(e).

As noted herein, Basabe was in fact thirty-eight years old when he applied for the position.