NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, VOCA-
TIONAL REHABILITATION, Petitioner v. MICHAEL DUANE MAXWELL,
Respondent

No. COA02-92

(Filed 4 March 2003)

**1. Appeal and Error— preservation of issues—failure to argue in brief**

Although petitioner assigned error to numerous findings, those assignments of error that are not set out in the brief are deemed abandoned, N.C. R. App. P. 28(b)(6).

**2. Public Officers and Employees— employment dismissal—handicapped—findings of fact**

The whole record test in an employment dismissal case reveals that substantial evidence exists to support the trial court's upholding of the Administrative Law Judge's findings of fact that respondent employee who suffers from diabetes mellitus, peripheral neuropathy, and hypothyroidism is handicapped, that the provision of vocational rehabilitation services to respondent by the North Carolina Commission of the Blind is evidence that respondent suffers from a handicapping condition, and that respondent's inability to keep up with his caseload was directly related to his visual impairment for which he sought accommodations that were not provided.

**3. Public Officers and Employees— employment dismissal—discrimination based on handicap—conclusions of law**

A de novo review reveals that the trial court did not err in an employment dismissal case by upholding the State Personnel Commission's conclusions of law that respondent employee who suffers from diabetes mellitus, peripheral neuropathy, and hypothyroidism is a qualified handicapped person under N.C.G.S. § 168A-3 and that respondent's dismissal was directly related to discrimination against respondent based on his disability.

Appeal by Petitioner from an order entered 23 October 2001 by Judge John R. Jolly, Jr. in Wake County Superior Court. Heard in the Court of Appeals 10 October 2002.

[156 N.C. App. 260 (2003)]

*Attorney General Roy Cooper, by Assistant Attorney General Lisa Granberry Corbett, for petitioner-appellant.*

*Voerman & Gurganus, by David E. Gurganus, for respondent-appellee.*

HUDSON, Judge.

Respondent, Michael Duane Maxwell, was employed by Petitioner, North Carolina Department of Health and Human Services, Division of Vocational Rehabilitation ("State VR") from 6 July 1998 until his termination on 30 April 1999. Thereafter, he appealed through internal grievance procedures without success and then filed a Petition for a Contested Case with the Office of Administrative Hearings ("OAH"). The Administrative Law Judge ("ALJ") and State Personnel Commission ("SPC") ruled in his favor, and the State VR sought review in superior court. The superior court adopted the decision of the SPC and remanded for entry of the appropriate order and for compliance. The State VR appealed to this Court, and, for the reasons explained below, we affirm.

Respondent suffers from diabetes mellitus, peripheral neuropathy, and hypothyroidism. He has had diabetes since birth and is completely insulin dependent. Fluctuations in his medication and his diet, coupled with his hypothyroidism, can result in lethargy, loss of concentration, difficulty with short-term memory, and depression.

Among the severe effects of Respondent's diabetes is visual impairment. He has had six operations on his eyes since 1989, most recently in March of 1999, one month prior to his termination. He suffers from detached retinas, macular holes, and floaters in his eyes. Respondent testified that the effect of these conditions is to "distort[] [his] vision in such a fashion that it's like looking at a fun-house mirror." Respondent testified further that his vision "oscillated back and forth rather rapidly." He uses over-the-counter reading glasses and a magnifying glass to read, but reading still takes him four times longer than it would a person with normal vision. Respondent testified that his visual impairment also affects his ability to write.

Respondent served as an intern in the Kinston office of the State VR from 26 March 1998 until 2 July 1998. During his internship, the Kinston office afforded him various accommodations, including additional illumination with a built-in magnifier for his work space. Respondent also had an assistant.

On 6 July 1998, the State VR hired Respondent to work in its Greenville office. Shortly thereafter, Respondent began to have trouble keeping up with his case load, due to his difficulties with the paperwork requirements of the job. In September 1998, Respondent met with his manager, Carlton Hardee, and provided him with a written summary of his visual problems and trouble with short-term memory.

As the paperwork became more difficult for Respondent, he repeatedly requested assistance, and he also contacted the Division of Services for the Blind to request accommodations. Specifically, Respondent requested the following accommodations: a table (provided); a lamp for his workspace (not provided); a copy of the Vocational Rehabilitation Manual index on audio tapes or compact discs (not provided to Respondent but provided to others); and a technical or other clerical assistant to help with his paperwork (provided by telephone from off-site).

Petitioner terminated Respondent on 30 April 1999, and Respondent filed an internal grievance. Department Secretary David Bruton upheld Respondent's dismissal on 26 July 1999. Respondent then filed a petition for a contested case with the Office of Administrative Hearings, which held a hearing on 25 August 1999. On 3 August 2000, Administrative Law Judge Robert Roosevelt Reilly, Jr., filed a Recommended Decision proposing that the dismissal be overturned. On 14 December 2000, the case came before the SPC. It's order, entered 11 January 2001, adopted the ALJ's Recommended Decision with modifications and ordered that Respondent be reinstated with back pay, benefits, and attorneys' fees. Petitioner then filed a Petition for Judicial Review on 21 February 2001. Superior Court Judge John R. Jolly, Jr., heard the matter on 21 May 2001, and entered an order 23 October 2001 upholding the decision of the SPC. Petitioner now appeals to this Court.

This Court's review of the superior court's order on appeal from an administrative agency decision generally involves "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994). Thus, in its order regarding an agency decision, the superior court facilitates our review when it states the standard of review it applied to each issue. *Deep River Citizen's*

*Coalition v. N.C. Dep't of Env. and Natural Res.*, 149 N.C. App. 211, 215, 560 S.E.2d 814, 817 (2002) (citation omitted). However, this Court recently explained that:

> an appellate court's obligation to review a superior court order for errors of law can be accomplished by addressing the dispositive issue(s) before the agency . . . and the superior court *without* [(1)] examining the scope of review utilized by the superior court and (2) remanding the case . . . .

*Capital Outdoor, Inc. v. Guilford County Bd. of Adjustment (II)*, 152 N.C. App. 474, 567 S.E.2d 440 (2002) (*quoting Capital Outdoor, Inc. v. Guilford County Bd. of Adjustment (I)*, 146 N.C. App. 388, 390, 392, 552 S.E.2d 265, 267 (2001), (Greene, J., dissenting), *rev'd per dissent*, 355 N.C. 269, 559 S.E.2d 547 (2002)); *Cf. Hedgepeth v. N.C. Div. of Servs. for the Blind*, 142 N.C. App. 338, 543 S.E.2d 169 (2001), *appeal after remand*, 153 N.C. App. 652, 571 S.E.2d 262 (2002). Here, the superior court's order clearly reflects the standard of review applied to each issue. Thus, we must determine whether the superior court properly applied that standard of review.

On review of the sufficiency of the evidence to support the findings of fact, this Court applies the "whole record" test. *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999). Under the "whole record" test, we must determine "whether the [agency's] findings are supported by substantial evidence contained in the whole record." *Id.* Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* Moreover,

> The "whole record" test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached.

*Floyd v. N.C. Dept. of Commerce*, 99 N.C. App. 125, 128, 392 S.E.2d 660, 662 (1990), *disc. review denied*, 327 N.C. 482, 357 S.E.2d 217 (1990) (citations omitted). As to the credibility of the witnesses, this Court noted that:

> Credibility determinations and the probative value of particular testimony are for the administrative body to determine, and it

may accept or reject in whole or part the testimony of any witness. Moreover, even though the ALJ has made a recommended decision, credibility determinations, as well as conflicts in the evidence, are for the agency to determine.

*Oates v. N.C. Dept. of Correction*, 114 N.C. App. 597, 601, 442 S.E.2d 542, 545 (1994) (internal citations and quotation marks omitted).

However, "[w]hen the petitioner contends the agency decision was affected by an error of law, . . . *de novo* review is the proper standard." *R.J. Reynolds Tobacco Co. v. N.C. Dep't of Env't & Natural Res.*, 148 N.C. App. 610, 614, 560 S.E.2d 163, 166, *disc. review denied*, 355 N.C. 493, 564 S.E.2d 44 (2002). Upon *de novo* review, this court must review the record "as though the issue had not yet been determined." *Whiteco Outdoor Adver.*, 132 N.C. App. at 470, 513 S.E.2d at 74.

[1] First, we note that Petitioner assigned error to the ALJ's findings of fact 8, 13, 17, 18, 19, 24, and 25 through 30 in their entirety and to findings of fact 5, 6, 7, 10, 11, 20, 21, 22, and 32 in part. In its brief, however, Petitioner discusses only findings 13 and 29. Thus, the assignments of error to the remaining findings are deemed abandoned. N.C. R. App. P. 28(b)(6) (2002).

[2] Petitioner first argues that the ALJ's findings of fact 13 and 29 "are not supported by the record when reviewed as a whole and that the trial court erroneously affirmed these findings." These findings of fact properly before us read as follows:

\* \* \*

13. [Respondent] is a handicapped individual because he suffers from diabetes mellitus, diminished vision and hypothyroidism. These conditions affect his everyday life activities, in respect to his ability to see like a normal person, his ability to read and understand and write like a normal person, and his ability to work and concentrate like a normal person. The providing of vocational rehabilitation services to [Respondent] by the North Carolina Commission of the Blind through the Department of Health and Human Resources of the State of North Carolina is evidence that he suffers from a handicapping condition. [Respondent's] condition can be expected to last for the rest of his life and there is no recognized cure for diabetes mellitus with diminished vision and hypothyroidism. [Respondent] is

insulin dependent and will remain insulin dependent for the rest of his life.

* * *

29. [Respondent] was dismissed during his probationary and trainee status because of his inability to provide necessary documentation in his case load files and his inability to, essentially, keep up with the paperwork necessary to show progress in respect to the case load he was assigned. In addition, the placing of [Respondent] in a separate office with no direct access to clerical assistance directly hampered his ability to perform his job.

As to finding of fact 13, Petitioner argues that there is insufficient evidence to support this finding and that the finding that Respondent is handicapped is erroneous as a matter of law. Thus, we apply the whole record test to the finding of fact and *de novo* review to the alleged error of law.

A review of the whole record discloses substantial evidence to support this finding of fact. In his testimony, Respondent described having had diabetes mellitus since birth and being completely insulin dependent. He expects to remain insulin dependent for the duration of his natural life. Further, Respondent testified that it takes him four times longer to read than it does a person with normal vision and that his vision is distorted like "looking at a fun-house mirror."

In challenging the sufficiency of the evidence to support this finding, Petitioner argues that Respondent "was not a credible witness." However, as we noted above, the credibility of the witnesses and the weight given to their testimony is for the agency to determine. *See Oates*, 114 N.C. App. at 601, 442 S.E.2d at 545. The SPC having found Respondent to be credible, his testimony supports this finding. Thus, substantial evidence in the whole record supports this finding.

Petitioner further argues that "[t]he portion of finding of fact 13 that Respondent received services from DSB and therefore is a handicapped person . . . is erroneous as a matter of law." Finding 13 itself does not support this contention. The portion of finding 13 that Petitioner challenges reads: "The providing of vocational rehabilitation services to [Respondent] by the North Carolina Commission of the Blind . . . is evidence that he suffers from a handicapping condition." This finding does not purport to conclude that because Respondent sought assistance from Blind Services he is automati-

cally qualified as handicapped. It merely indicates that such assistance is evidence that he is handicapped, which is supported by the evidence and not contrary to law.

Likewise, we find substantial evidence in the whole record to support finding of fact 29. By letter 12 April 1999, Mr. Hardee notified Respondent that he would not be recommended for permanent status and that his employment with Petitioner would be terminated during his probationary period on 30 April 1999. Mr. Hardee explained to Respondent that "there has been a significant lack of progress and your overall adjustment has not been satisfactory" and that Respondent has "not closed a case during the past 8 months . . . ." The record reflects that Respondent's inability to keep up with his case load was directly related to his visual impairment for which he sought accommodations that were not provided. Thus, after reviewing the whole record, we find substantial evidence to support these findings of fact.

[3] Petitioner next argues that the SPC's Conclusions of Law 2, 8, and 9 are "not supported by the substantial credible evidence in the record as a whole, and [are] contrary to existing case law." We disagree.

The SPC's Conclusions of Law 2, 8, and 9 provide as follows:

2. The [Respondent], is a qualified handicapped individual with a recognized disability.

* * *

8. Dismissal of [Respondent] herein from his trainee position, therefore, was directly related to the discrimination against [Respondent] based on his disability.

* * *

9. [Respondent], therefore, has been discriminated against in violation of the provisions of N.C.G.S. § 126-16, in that he was discriminated against on the basis of his disability.

Petitioner first contends that Conclusion of Law 2 is erroneous because Respondent "failed to meet his burden of showing that he met the statutory definition of a 'qualified handicapped person.' " We disagree.

The North Carolina Handicapped Persons Protection Act (NCHPPA) was re-titled the North Carolina Persons with Disabil-

ities Protection Act effective 1 October 1999, and amended such that "person with a disability" is generally substituted for "handicapped person" throughout the chapter. Section 168A-3 was also amended to include "working" as a "major life activity." However, since Respondent's contested case was filed prior to the effective date of the amendment, we apply the terminology of the NCHPPA. 1999 N.C. Sess. Laws ch. 160, § 1; *see also Simmons v. Chemol Corp.*, 137 N.C. App. 319, 322, 528 S.E.2d 368, 370 (2000).

"[O]ne's status as a qualified handicapped person must be preceded by a determination that one is a handicapped person . . . ." *Simmons*, 137 N.C. App. at 323, 528 S.E.2d at 371 (citations and quotation marks omitted). Section 168A-3(4) defines a handicapped person as:

> any person who (i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such impairment; or (iii) is regarded as having such an impairment.

N.C. Gen. Stat. § 168A-3(4) (1998 Cum. Supp.). Section 168A-3(4)(b) defines "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, *seeing*, hearing, speaking, breathing, and *learning*. N.C. Gen. Stat. § 168A-3(4)(b) (1998 Cum. Supp.) (emphasis added). In addition, section 168A-3(9)(a) defines a "qualified handicapped person" with regard to employment as:

> a handicapped person who can satisfactorily perform the duties of the job in question with or without reasonable accommodation, (i) provided that the handicapped person shall not be held to standards of performance different from other employees similarly employed.

N.C. Gen. Stat. § 168A-3(9)(a) (1998 Cum. Supp.).

This Court recently held that the "plain language of the statute requires the disabled person be able to satisfactorily perform the job, *either* 'with *or* without' reasonable accommodation. Therefore, to be classified as a 'qualified person with a disability' the employee must be capable of performing the job duties with reasonable accommodations." *Campbell v. N.C. Dep't of Transp.*, 155 N.C. App. 652, 663, —— S.E.2d ——, —— (2003).

The term reasonable accommodation with regard to employment as defined under the NCHPPA is:

making reasonable physical changes in the workplace, including, but not limited to, making facilities accessible, modifying equipment and providing mechanical aids to assist in operating equipment, or making reasonable changes in the duties of the job in question that would accommodate the known handicapping conditions of the handicapped person seeking the job in question by enabling him or her to satisfactorily perform the duties of that job.

N.C. Gen. Stat. § 168A-3(10)(a) (1998 Cum. Supp.).

Here, Respondent testified that his diabetic retinopathy causes visual distortion. Because of this impairment, he takes four times as long to read materials and comprehend them as one with normal vision. Further, fluctuations in his blood sugar level due to his diabetes and insulin dependency cause him to be lethargic and inattentive. Respondent testified that he sought accommodations from Petitioner, including better lighting for his work area and access to the Vocational Rehabilitation Manual index in audio form, and that such accommodations would have enabled him to perform his job duties satisfactorily. Thus, after *de novo* review, we conclude that Respondent is a qualified handicapped person.

Petitioner next argues that the SPC's conclusions of law 8 and 9 and the superior court's conclusion of law 1(g) are erroneous as a matter of law because Respondent did not put on any direct evidence of discrimination and failed to satisfy the three-prong test set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668 (1973). We disagree.

According to *McDonnell-Douglas*, the plaintiff (here Respondent) bears the burden of showing *prima facie* that he is a member of a protected class, here handicapped, and that adverse employment action was taken against him because he is handicapped. Once he makes this *prima facie* showing, the burden shifts to the defendant (here Petitioner) to produce legitimate non-discriminatory reasons for dismissing plaintiff. If the defendant shows non-discriminatory reasons for the discharge, the burden shifts back to the plaintiff to show that those reasons were pretextual. *Dep't of Correction v. Gibson*, 308 N.C. 131, 137-40, 301 S.E.2d 78, 82-84 (1983) (adopting evidentiary standards set forth in *McDonnell-Douglas* as appropriate for state law claims).

Here, Respondent's evidence established *prima facie* that he is a member of a protected class (handicapped) and that he was termi-

nated while requesting accommodations to enable him to do his work despite his handicap. Thus, the burden shifted to Petitioner to articulate legitimate business reasons for Respondent's termination. Petitioner contended that Respondent was a poor employee because in the nine months he was employed there he did not successfully close a single case. However, the record shows that the particular unit Respondent was assigned to, Greenville's Probation and Parole, had among the most difficult case loads to handle. Ellis Parker Stokes, a twenty-six year employee of Vocational Rehabilitation, testified that Probation and Parole had "[p]robably the most difficult clientele [Respondent] could have to work with" and that not having an on-site assistant would hamper even his (Stokes') ability to manage such a caseload.

The SPC specifically found that Respondent's inability to keep up with the case load, including the paperwork, "was directly related to [his] handicapping condition." This finding (No. 21) was not discussed by Petitioner in its brief and is thus binding. This, and the other findings that are supported by the evidence, in turn support the conclusions of law that Respondent's dismissal "was directly related to the discrimination against [Respondent] based on his disability" and that "he was discriminated against on the basis of his disability." On *de novo* review, we conclude, as the superior court did, that in order to reach the conclusion that Respondent was dismissed because of discrimination on the basis of his disability, the SPC necessarily rejected the State VR's argument that the dismissal was for a legitimate reason. Thus, we hold that the superior court's conclusion of law 1(g), which provides that "even though the Final Decision does not specifically set forth the three prong test established by [*McDonnell-Douglas*], that both the Administrative Law Judge and the State Personnel Commission . . . considered evidence in respect thereto . . . and addressed each issue set forth in that decision," was adequate as a matter of law. We do not believe that the decision was arbitrary and capricious.

In sum, we hold that the findings of the SPC are supported by the whole record, that the findings support the conclusions of law, and that the conclusions of law are consistent with the applicable law. Accordingly, we affirm the decision of the superior court.

Affirmed.

Judges TIMMONS-GOODSON and LEVINSON concur.